IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA



Drubay C. Hall, Jr.,            )   C.A. 2:06-1246-PMD-RSC
#2004-06775,                    )
                                )
        Plaintiff,              )
                                )
     -versus-                   )   **REPORT AND RECOMMENDATION**
                                )
Joey Preston, Administrator     )
of Anderson County; Robert      )
Daly, Director of Anderson      )
County Detention Center;        )
Arlette Jones, Capt.; NFN       )
Carol Roundtree, Nurse; NFN     )
Morris, Officer; NFN Lollis,    )
Officer,                        )
                                )
        Defendants.             )
                                )

This civil rights action pursuant to 42 U.S.C. § 1983[1] brought by a prisoner proceeding in forma pauperis, is before the undersigned United States Magistrate Judge for a report and

---

[1] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

recommendation on the defendants' summary judgment motion. 28 U.S.C. § 636(b).

On April 28, 2006, the plaintiff, Drubay C. Hall, Jr., a former pretrial detainee at Anderson County Detention Center (ACDC), sued Joey Preston[2], Administrator of ACDC; Robert Daly, Director of ACDC; Arlette Jones, Capt. at ACDC; and NFN Carol Roundtree, nurse at ACDC. NFN Morris, Transport Officer at ACDC, and NFN Lollis, Officer at ACDC, were added as defendants in an amended complaint on June 9, 2006. A second amended complaint was filed on July 2, 2007, which the defendants answered on July 30, 2007.

Hall alleged that the defendants refused to provide him with proper medical care and that this refusal thus violated his constitutional rights. Hall also brought a claim under the South Carolina Tort Claims Act (SCTCA), S. C. Code Ann. § 15-78-40 et seq. Hall seeks damages.

The defendants filed a summary judgment motion on October 29, 2007, along with excerpts of Hall's deposition, various affidavits, and exhibits. On January 4, 2008, Hall filed a response in opposition to the defendants' motion with exhibits, certain of the affidavits filed originally by the defendants, and his own affidavit. Lastly, on January 16, 2008, the defendants

---

[2] Preston was dismissed from this action on August 14, 2006, by Patrick Michael Duffy, United States District Judge.

filed a reply. Hence, it appears consideration of the motion is appropriate.

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted when the record demonstrates that the requirements of Rule 56(c) have been met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Summary judgment is mandated where the party opposing the motion has failed to establish the existence of an element essential to his case, and on which he bears the burden of proof. Id., 477 U.S. at 322. The party seeking summary judgment must inform the court of the basis for its motion, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party, however, need not offer proof that negates the opponent's claim; rather, as to issues on which the party opposing the motion has the burden of proof at trial, the party seeking summary judgment need only point to an absence of evidence to support the opponent's claim. The party opposing summary judgment must then point to facts evidencing a genuine issue for trial. Fed. R. Civ. P. 56(c); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Summary judgment should not be denied merely because the plaintiff raises a "metaphysical doubt" as to the material facts. Mathushita Electrical Industrial Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "unsupported speculation is

not sufficient to defeat a summary judgment motion." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). If the plaintiff's evidence does not raise a genuine issue as to a material fact, then summary judgment is proper for the defendants. See, Anderson, 477 U.S. at 249-50 (where evidence is not significantly probative, then summary judgment is proper). Furthermore, even as to a material fact, an issue is genuine only where the record establishes that the fact-finder could find, by a preponderance of the evidence, that the plaintiff is entitled to judgment in his favor. Id., 477 U.S. at 252.

## FACTS

The facts either undisputed or according to the plaintiff as the non-moving party, to the extent they are supported by the record, and all reasonable inferences therefrom are as follow.

On November 3, 2004, the plaintiff was detained at ACDC awaiting trial on three criminal charges. He was convicted in October 2006 and was transferred to a facility of the South Carolina Department of Corrections (SCDC). His complaint here is that he was denied a refill prescription of the drug Klonopin, a controlled substance in the benzodiazepine family, which denial, Hall believes caused him to suffer seizures and resulting injuries.

Prior to his detention, Hall had been diagnosed by various psychiatrists between 1989 and 2004 with bi-polar depression and

an anxiety disorder. The year before Hall was detained, Dr. Wadee, Hall's personal physician, prescribed Klonopin for him for his anxiety only, not to prevent seizures. (Hall depo. p. 17) (Ex. A to Hampton aff.). However, Hall did not take his medications regularly, prior to admission to the ACDC since "he was out of a job and couldn't afford mainly the doctor visits and things like that..." . (Hall Depo. p. 18). When Hall did not take his Klonopin regularly, he did not suffer any seizure episodes.

When Hall was arrested in November 2004, in Greenwood, South Carolina, he did not have any medication with him. (Hall Depo. p. 18). However, at the time, his medications included a hypertension medication, Lexapro for depression, as well as Klonopin. When he was transported from Greenwood to the City of Anderson jail he was initially refused admission because he did not have his medications. The transporting officers were required to retrieve his medications, with the exception of the Klonopin which the City prohibits. When Hall was transferred from the City to the ACDC he had all of his medications except the Klonopin.

Hall signed a "receiving screening form" on November 4, 2004, which asked if he was taking any medications or was supposed to be taking any medications. Hall listed three medications, none of which was Klonopin. (Ex. B Hampton depo.).

5

Once at ACDC, Hall decided, without input from any health care provider, to quit taking his Lexapro. He later changed his mind and asked for the drug in January, 2005. Hall also requested Defendant Roundtree, a nurse at the ACDC, to arrange for his prescription for Klonopin and his other medications from his private physician transferred to an Anderson area pharmacy where they could be picked up for him. Roundtree did so. Hall had not taken Klonopin from the time of his arrival at ACDC in November 2004 until his prescription was refilled in 2005 and did not suffer any seizure episodes.

Defendant Roundtree scheduled an appointment at the Anderson Free Clinic ("Free Clinic") to renew Plaintiff's prescriptions for Klonopin and Lexapro. On February 16, 2005, Hall was transported to the Free Clinic and was evaluated by Dr. Grady Adkins. Dr. Adkins wrote a six month prescription for Lexapro and Klonopin, with instructions to schedule an appointment near the end of this period for refills. (Pl.'s Aff. ¶ 3, Ex. M). Defendant Officer Morris was present during the appointment. Id.

In July 2005, Hall alerted Nurse Roundtree that his prescriptions were about to run out and requested an appointment in order to get refills. Roundtree knew that Hall's Klonopin would run out in August. Roundtree called the Free Clinic and was informed that no refills for Klonopin would be issued at that time because Klonopin was not being prescribed for seizures, but

rather as a "mental health med.".  (Roundtree aff. and ex.7 to aff.).

On August 10, 2005, Dr. DeCastro, a private practice physician under contract with the ACDC to provide health care to the detainees, wrote Hall a one month prescription for Klonopin. However, when Roundtree informed the doctor on August 17, 2005, "of the situation the doctor responded that he would not continue to write a prescription for Klonopin to treat seizures since Klonopin is a controlled substance." (Roundtree aff.)

Hall ran out of Klonopin on September 11, 2005.  On September 17, 2005, Hall was found in his cell by ACDC guards presumably having suffered some kind of a seizure episode.  He was taken to a medical cell and suffered another seizure two days later.  He was transported to the Anderson Area Medical Center where according to the medical chart Hall had suffered a symptomatic seizure secondary to benzodiazepine withdrawal, a closed head injury, contusions, and a small subarachnoid hemmorage.  (Ex. B to Pl. aff.).  However, also in the record is Hall's discharge summary containing a diagnosis of hypokalemia with grand mal seizure secondary to diuretics, Benzodiazepine withdrawal syndrome, and loss of consciousness secondary to orthostatic hypotension.

Defendant Lollis was assigned to guard Hall at the hospital. Hall was discharged after eight days, and his discharge records

were given to Lollis. Hall asked Lollis for the records and Lollis declined. The ACDC has a policy to preserve confidentiality in medical records that detainees can have their records sent to their doctor or representative, or they can review their records in the ACDC medical area with a member of the medical staff present to answer questions.

Hall had been taking 1 mg. of Klonopin three times a day; upon discharge Hall was given a prescription for two weeks of Klonopin, 1 mg. twice a day and one week's worth of Klonopin, 1 mg. once a day. He received no further Klonopin prescriptions and had no further seizures after that prescription ran out in October 2005.

It is undisputed that no defendant had the ability to prescribe Klonopin for Hall and that only a doctor can prescribe Klonopin. Hall has not sued any physician in the instant action. Further, there is no allegation that any defendant failed to properly dispense drugs which had been prescribed by a doctor.

## APPLICABLE LAW

### LAW RELATED TO MEDICAL CARE AFFORDED PRETRIAL DETAINEES

The plaintiff was a pre-trial detainee at all times relevant to his complaint. The medical claims of a pre-trial detainee fall under the Fourteenth Amendment's Due Process Clause rather than the Cruel and Unusual Punishment Clause of the Eighth Amendment. City of Revere v. Massachusetts Gen. Hosp., 463 U.S.

239, 103 S. Ct. 2979 (1983). However, the inquiry under both amendments is the same; whether the officials were deliberately indifferent to the detainee's serious medical needs. See, Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988) citing Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285 (1976)).

Accordingly, a plaintiff makes out a constitutional claim if he can establish that the prison medical personnel responsible for his care were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976); Amos v. Maryland Dep't of Pub. Safety & Correctional Servs., 126 F.3d 589, 610 (4th Cir. 1997), vacated in part on other grounds, 118 S.Ct. 2339 (1998). These requirements go beyond even a showing of negligence, and requires Plaintiff to establish that the defendants acted with an indifference as would "offend evolving standards of decency." Id.

In a § 1983 claim, whether a medical provider has been deliberately indifferent to a prisoner's serious medical need is a two part inquiry. First, the prisoner must show that he was deprived of an objectively serious human need. Johnson v. Quinones, 145 F.3d 164 (4th Cir. 1998). Second, the plaintiff must demonstrate that the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321 (1991).

Farmer v. Brennan, 511 U.S. 825 (1994), and cases interpreting Farmer, make clear that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific serious risk of harm confronting the inmate. See, Farmer, 511 U.S. at 837, 114 S.Ct. at 1978-79 (stating that "the official must both be aware that a substantial risk of serious harm exists, and he must also draw the inference").

Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837, 114 S.Ct. at 1979. Prison officials must know of and disregard an objectively serious condition, medical need, or risk of harm. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Farmer, 511 U.S. at 844, 114 S.Ct. at 1982; see, Rich v. Bruce, 129 F.3d 336, 338 (4th Cir. 1997) (holding that prison official was not deliberately indifferent because he did not actually draw the inference that the prisoner was exposed to a specific risk of harm).

In Estelle v. Gamble, the prisoner contended that other examinations should have been conducted by the prison's medical staff and that X-rays should have been taken. The Supreme Court

pointed out that not "every claim by a prisoner that he has not received adequate medical treatment states a violation." Id. at 105. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). Cf. Whitley v. Albers, 475 U.S. 312, 320 (1986).

Likewise, constitutionally, state facilities are not required to furnish prisoners the best of care, only reasonable care. Vinnedge v. Gibbs, 550 F.2d 926 (4th Cir. 1977). The constitution also does not guarantee a prisoner the treatment of his choice. Jackson v. Fair, 846 F.2d 811 (1st Cir. 1988). The mere failure to treat all medical problems to a prisoner's satisfaction, even if actual medical malpractice is involved, is insufficient to support a claim under § 1983. Sosabee v. Murphy, 797 F.2d 179 (4th Cir. 1986). Even if plaintiff could establish negligence in his medical treatment, his cause of action would be in negligence against the defendants. Section 1983 does not provide for a remedy for violation of state law, but only for violations which rise to the level of unconstitutional deprivation. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, supra. Negligence simply is not actionable

11

under 42 U.S.C. § 1983.  Daniels v. Williams, 474 U.S. 327 (1986).

## DISCUSSION

A review of the record and relevant case law reveals that the defendants' motion for summary judgment should be granted.

Plaintiff's theory of his case is that he was denied a prescription for Klonopin and the denial caused him to suffer seizures and residuals from the seizures.  In order to assert a § 1983 claim, a plaintiff must allege a personal injury fairly traceable to a named defendant's allegedly unlawful conduct.  Allen v. Wright, 468 U.S. 737, 751 (1984).  It is undisputed that an unnamed physician under contract to provide medical care to detainees and prisoners at the ACDC refused to rewrite the Klonopin prescription in September 2005.  It is also undisputed that Roundtree sought an appointment for Hall at the Free Clinic, but was denied by the Clinic.  While a plethora of ACDC employees were named as defendants, the person or persons who may have had the actual ability to write the sought after prescription were not sued.  No named defendant is a physician, and it is beyond cavil that jail officers are entitled to rely upon the expertise of medical doctors in treating medical conditions of the detainees.  Miltier v. Bourne, 896 F.2d 848, 854-55 (4th Cir. 1990).

Further to the extent Plaintiff alleges malpractice, no § 1983 claim lies. Negligence or malpractice in medical services does not create a constitutional cause of action. Moreover, medical malpractice would not become a constitutional issue merely because the plaintiff is a prisoner. Estelle v. Gamble, 429 U.S. 97, 106 (1976).

As an alternative ground for summary judgment, it follows that the defendants are entitled to qualified immunity from suit in their individual capacities under Harlow v. Fitzgerald, 457 U.S. 800, 815-16 (1982). Further, the defendants in their official capacities are not "persons" who may be sued under the civil rights statutes. Will v. Michigan Dept. of State Police, 491 U.S. 58, 66-71 (1989). The defendants are entitled to judgment as a matter of law on Hall's § 1983 claims.

As Plaintiff fails to show that Defendants violated his rights under federal law as discussed above, only potential state law claims remain. Thus it is also recommended that, pursuant to 28 U.S.C. § 1367(c)(3), any remaining state law claims be dismissed without prejudice.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendants' motion for summary judgment be

granted and that the court decline to exercise jurisdiction over the remaining state law claims.

                                          Respectfully Submitted,

                                          */s/ Robert S. Carr*
                                          Robert S. Carr
                                          United States Magistrate Judge

Charleston, South Carolina

February 28, 2008

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court judge need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985).